UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERTO SPAGNUOLO,

    Plaintiff,

v.

AUTO CLUB GROUP INSURANCE
COMPANY, d/b/a AAA MICHIGAN,

    Defendant.

Case No. 18-cv-13969
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]**

Alberto Spagnuolo was terminated from his job at Auto Club Group Insurance after 10 years with the company. Spagnuolo believes he was terminated because he disclosed that he had bipolar disorder and requested a reasonable accommodation. But Auto Club insists Spagnuolo was fired only because of years of documented performance issues. Spagnuolo filed suit for violations of the Family Medical Leave Act (FMLA), for discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), and for violations of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA). Auto Club now argues it is entitled to summary judgment on Spagnuolo's three remaining claims. For the reasons that follow, the Court grants Auto Club's motion and dismisses Spagnuolo's case.

**I.**

When, as here, defendants seek summary judgment, the Court takes the facts in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Spagnuolo began working for Auto Club as a Data Warehouse Consultant in 2007. (ECF No. 18-2, PageID.149, 154.) At the end of 2015, because of a reorganization, Spagnuolo was transferred to the Insights Department to work as a CRM Implementation Specialist. (*Id.* at PageID.162–164.) He was supervised by Valerie DeLaVergne in the new position. (*Id.* at PageID.155, 162.) Spagnuolo reports that he had no issues with DeLaVergne and thought she was a fair supervisor. (*Id.* at PageID.166.)

On Spagnuolo's 2016 year-end review, DeLaVergne gave him an overall rating of "met some expectations" —a four on a five-point scale, with five being the worst performance. (*Id.* at PageID.384–385; ECF No. 18-3, PageID.463.) DeLaVergne found that Spagnuolo lacked proactivity and struggled to get to the expected skill level for his role. (*Id.* at PageID.385.) By the end of the year, DeLaVergne noted that Spagnuolo had made "some improvement," but that she was still looking for growth in his technical ability, attention to detail, and accuracy of projects for the next year. (*Id.*)

In the fall of 2017, one of Spagnuolo's coworkers, Pamela Cohen, was promoted and became his supervisor. (*Id.* at PageID.156.) Cohen was based in Florida and managed Spagnuolo remotely. (ECF No. 18-3, PageID.462.) Cohen immediately noticed issues with Spagnuolo's performance. (*Id.* at PageID.461.) Cohen met with Spagnuolo multiple times to coach him in an effort to improve his performance in a number of areas. (*Id.*) One of the issues that Cohen emphasized was that Spagnuolo struggled to do his work independently, and often relied heavily on co-workers for help. (*Id.* at PageID.461–462.)

In Spagnuolo's opinion, Cohen was not a good supervisor. (ECF No. 18-2, PageID.166.) Spagnuolo believed that Cohen did not care about her employees and was not good at communicating with or managing them. (*Id.* at PageID.166–67.) He also found her to be

2

"belittling, demanding, and humiliating." (*Id.* at PageID.169.) According to Spagnuolo, at least one of his coworkers felt similarly about Cohen. (*Id.* at PageID.167–168.)

After her coaching sessions did not result in improvement of Spagnuolo's performance, in late 2017, Cohen consulted with human resources (known as Employee Relations at Auto Club). (ECF No. 18-3, PageID.462.) One of the human resources representatives, Cherelyn Dunlap, suggested they place Spagnuolo on an employee improvement plan ("EIP") to help improve his performance. (*Id.* at PageID.462; ECF No. 18-4, PageID.496.) Cohen drafted an EIP and work plan, which was then reviewed and approved by human resources. (ECF No. 18-3, PageID.462, 467–469; ECF No. 18-4, PageID.497.) Cohen and Dunlap met with Spagnuolo on January 2, 2018 to tell him about the EIP and discuss their expectations for his performance improvement. (ECF No. 18-3, PageID.462.) The EIP was set to last for 37 days. (*Id.*)

During this 37-day period, Cohen provided Spagnuolo with his 2017 year-end performance review. (*Id.* at PageID.462–463.) Spagnuolo once again received an overall rating of "met some" expectations. (*Id.* at PageID.463, 482–483.) Cohen noted that Spagnuolo was still struggling with consistent execution of work processes and guidelines, including accurately tracking his time, sending projects through proper quality checks, and writing and understanding code. (*Id.* at PageID.470–483.) During a meeting with Cohen and Dunlap about his performance review, Spagnuolo complained to Dunlap that the company was "not creating a healthy environment" because Cohen asked questions about everything he did and made him feel humiliated and unwanted. (ECF No. 18-2, PageID.188–189.)

Cohen found that Spagnuolo's performance had not improved by the end of the first EIP period. (ECF No. 18-3, PageID.463.) Cohen noted a number of Spagnuolo's performance issues during this period, including releasing a deliverable to a client without a quality check and

3

submitting an incomplete and inaccurate project. (*Id.*) According to Cohen, Spagnuolo was still unable to do his work independently and continued to heavily rely on his coworkers. (*Id.*) As a result, on or around February 12, 2018, the company moved Spagnuolo to the second phase of the performance improvement process—probation. (ECF No. 18-2, PageID.405–407.) He was again given 37 days to improve. (*Id.*)

About two weeks into his probation period, on February 26, 2018, Spagnuolo submitted a letter to human resources requesting "a reasonable accommodation or an alternative position in the organization" under the ADA. (*Id.* at PageID.408.) He included a letter from his psychiatrist, Ancuta Matei, which stated Spagnuolo was under her professional care for treatment of bipolar disorder. (*Id.* at PageID.409.) Dunlap provided Spagnuolo with a letter and an "interactive process questionnaire" for his doctor to complete. (*Id.* at PageID.226, 410; ECF No. 18-4, PageID.497.) Spagnuolo eventually returned the completed questionnaire to Dunlap. (ECF No. 18-4, PageID.497.)

On the questionnaire, Dr. Matei indicated that Spagnuolo was diagnosed with "affective disorder—bipolar disorder," but that his impairment did not substantially limit any major life activities. (ECF No. 18-2, PageID.411.) She further stated that Spagnuolo had been "functioning well to my knowledge for the past year and longer" and that "his condition did not restrict him so far in terms of his employment but stressful situation/work pressure can certainly affect him negatively." (*Id.* at PageID.411–412.) When asked if Spagnuolo required any reasonable accommodations, Dr. Matei wrote "please evaluate and accommodate as you see fit." (*Id.* at PageID.412.) She did recommend giving Spagnuolo two weeks off work. (*Id.*) On the final page, Dr. Matei noted Spagnuolo "may in fact benefit from a reasonable accommodation such as changing position, however it is not my call." (*Id.* at PageID.413.)

Dunlap interpreted Dr. Matei's responses to mean that Spagnuolo did not have any work restrictions and did not need an accommodation. (ECF No. 18-4, PageID.498.) But she did grant Spagnuolo the two weeks off work that the doctor had requested. (*Id.*)

In the meantime, Spagnuolo's probation was set to expire in mid-March. Because Spagnuolo's performance had still not improved, Cohen intended to terminate him during her upcoming trip to the Michigan office. (ECF No. 18-3, PageID.464.) But when Cohen arrived in Michigan, she learned that Spagnuolo had taken two weeks off, so she would not be able to meet with him during her trip. (*Id.*) Cohen was not told the reason for Spagnuolo's time off. (*Id.*) According to Cohen, she was also not told that Spagnuolo had requested an accommodation based on a disability. (*Id.* at PageID.466.)

After Spagnuolo returned to work on April 10, Dunlap met with him to discuss the information from his doctor. (*Id.*; ECF No. 18-2, PageID.233.) Spagnuolo stated that he had no issues at work until he was transferred to the CRM Implementation Specialist position and was assigned Cohen as a supervisor. (*Id.*) Spagnuolo told Dunlap he wanted a new supervisor or a different position. (*Id.*)

Dunlap consulted with her supervisor and in-house counsel. (ECF No. 18-4, PageID.498.) According to Dunlap, although Dr. Matei did not indicate Spagnuolo needed an accommodation, because he claimed his issues stemmed from his position transfer, the company decided to allow him to search for another position within the company. (*Id.* at PageID.498–499.) Company policy normally prohibits an employee on an EIP to apply for other positions, but Auto Club waived this policy for Spagnuolo as a courtesy (not as a reasonable accommodation, they emphasize). (*Id.* at PageID.499.)

Dunlap informed Spagnuolo of this decision, and he identified some positions he was interested in, but made no efforts to apply for any of the jobs. (*Id.*) Spagnuolo claims he did not apply because he "didn't know what the process was." (ECF No. 18-2, PageID.236.) Auto Club points out that Spagnuolo had applied for positions with the company in the past, including in February 2018. (ECF No. 18, PageID.105 (citing ECF No. 18-2, PageID.236).) Dunlap eventually followed up with Spagnuolo, reminded him that he needed to actively apply for a new position, and assigned a staffing specialist to assist him. (ECF No. 18-4, PageID.499.) Cohen was also informed that Spagnuolo would be allowed to look for a new position, but she was not told a reason. (ECF NO. 18-3, PageID.464.)

During this time, Spagnuolo was still on probation. (ECF No. 18-4, PageID.499.) Because his original probationary period had been extended, there was no end date on his probation (although the company would not allow it to remain in place indefinitely). (*Id.*) Cohen came to Dunlap and explained that Spagnuolo's performance continued to be unacceptable in the two-and-a-half months since his time off. (ECF No. 18-3, PageID.464; ECF No. 18-4, PageID.499.)

On June 25, 2018, Spagnuolo was placed on another EIP, extending his probation for another 37 days. (ECF No. 18-2, PageID.421–423.) The EIP stated that failure to improve could lead to further disciplinary action or termination. (*Id.* at PageID.423.) Cohen states she also explicitly told Spagnuolo he would be terminated if he did not improve. (ECF No. 18-3, PageID.465.) Spagnuolo was allowed to continue applying for open positions during this time. (ECF No. 18-4, PageID.499.)

At the end of the EIP period, Cohen reported to her supervisor and human resources that Spagnuolo's performance had still not improved. (*Id.*; ECF No. 18-4, PageID.499.) According to Cohen, during this period Spagnuolo had submitted a program to quality assurance with prohibited

6

terms, sent files to vendors that contained errors, missed several due dates, and failed the quality assurance process more than half of the time. (ECF No. 18-3, PageID.465.) Cohen recommended that Spagnuolo be terminated, and her supervisor and human resources agreed. (*Id.*; ECF No. 18-4, PageID.500.) Spagnuolo was terminated effective August 4, 2018. (ECF No. 18-2, PageID.427–429; ECF No. 18-4, PageID.500.) The termination report states Spagnuolo was fired for unreliable work and lists a number of specific examples. (ECF No. 18-2, PageID.429.) Dunlap informed Spagnuolo that he was eligible to continue to apply to other open positions at Auto Club. (ECF No. 18-4, PageID.500.)

Spagnuolo filed a charge with the Equal Employment Opportunity Commission (EEOC) on August 23, 2018, alleging that Auto Club had discriminated against him. (ECF No. 18-2, PageID.450.) On December 20, 2018, he filed this lawsuit, which included seven counts alleging violations of a number of laws. (ECF No. 1.) He subsequently amended his complaint and streamlined it to include three counts. (ECF No. 12.) Following discovery, Auto Club now asks this Court to grant it summary judgment on all counts. (ECF No. 18.)[1]

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

---

[1] The Court notes that Spagnuolo filed his Response (ECF No. 20) late without requesting leave to do so. For the purpose of efficiently adjudicating the motion for summary judgment, the Court will accept the late-filed response.

7

law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

## III.

In his amended complaint, Spagnuolo brings three claims against Auto Club: violation of the FMLA, disability discrimination in violation of the ADA and the PWDCRA, and failure to accommodate a disability under the ADA and the PWDCRA. (ECF No. 12.) The Court will address Auto Club's arguments for summary judgment on each of these claims in turn.

### A.

As an initial matter, Spagnuolo's FMLA claim must be summarily dismissed. Auto Club raised arguments in its motion for summary judgment regarding Spagnuolo's FMLA claim and Spagnuolo failed to address those arguments (or even mention his FMLA claim) in his response. (*See* ECF No. 20.) Yet Spagnuolo responded to Auto Club's other arguments. Sixth Circuit law on abandonment of claims is clear: "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing three additional Sixth Circuit cases holding the same). Accordingly, the Court finds that Spagnuolo has abandoned his FMLA claim and grants Auto Club summary judgment on that claim.

### B.

That leaves Spagnuolo's claims that Auto Club discriminated against him on account of a disability by terminating him and failing to provide a reasonable accommodation. Spagnuolo brings these claims under both the ADA and the PWDCRA.[2]

---

[2] Because the parties do not dispute that disability-based claims under the PWDCRA and the ADA are analyzed under the same framework, the Court will follow the parties' lead and address both claims under the framework of the ADA.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Regarding prong (A), "[m]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Spagnuolo's claims that he was terminated on account of his bipolar disorder and that Auto Club failed to reasonably accommodate this disability are both premised on Spagnuolo qualifying as disabled under the ADA.

The scope of the ADA's definition of disability is intended to be expansive: the ADA Amendments Act of 2008 added rules of construction that the definition of disability should "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A); *see also* 29 C.F.R. § 1630.1(c)(4) ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis."). Nonetheless, "not every impairment, illness or injury will constitute a disability." *Perry v. Am. Red Cross Blood Servs.*, No. 3-13-1146, 2015 WL 1401058, at *2 (M.D. Tenn. Mar. 26, 2015). Auto Club argues

that Spagnuolo is not disabled as defined by the ADA because his bipolar disorder does not substantially limit any major life activities. In his response brief, Spagnuolo argues that his ability to work was "unequivocally limited as a result of his bipolar disorder." (ECF No. 20, PageID.732.) Thus, Spagnuolo *appears* (more on this below) to assert that his bipolar disorder impacted only the major life activity of working. (ECF No. 20, PageID.732.)

In a case where a plaintiff argues that "working" is his only major life activity that is limited, he is "required to show that [his] impairment limits [his] ability to 'perform a class of jobs or broad range of jobs.'" *Tinsley v. Caterpillar Fin. Servs., Corp.*, 766 F. App'x 337, 342 (6th Cir. 2019) (quoting the Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. § 1630 Appendix) (other internal citations omitted).

Spagnuolo's own deposition testimony makes it clear that the only factor that limited his ability to do his job was his manager. When asked if he could do the job with a different manager, Spagnuolo answered: "Absolutely." (ECF No. 18-2, PageID.200.) Spagnuolo consistently stated his job difficulties were related only to his manager, Cohen, and that he was fully capable of performing his job duties with a different manager. (*Id.* at PageID.200, 223.) Spagnuolo's doctor, Dr. Matei, also confirmed that Spagnuolo's bipolar disorder did not restrict his ability to do his job. (ECF No. 18-2, PageID.411–412.) She instead noted that his stress at work seemed to be caused by his supervisor and recommended a new supervisor as an accommodation. (ECF No. 18-6, PageID.679.) But "[p]ersonality conflicts, workplace stress, and being unable to work with a particular person or persons do not rise to the level of a 'disability' or inability to work for purposes of the ADA." *Fricke v. E.I. Dupont Co.*, 219 F. App'x 384, 389 (6th Cir. 2007) (citing *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524–25 (7th Cir. 1996)). So, in terms of his argument that his major life activity of working was limited, there is no record evidence to support the proposition

10

that Spagnuolo was limited in performing "either a class of jobs or broad range of jobs," and thus no reasonable jury could find him "disabled" as that term is used in the ADA. *See Tinsley*, 766 F. App'x at 343; 29 C.F.R. § 1630 Appendix.

Earlier, the Court emphasized the word "appears"; in fact, it is not clear whether Spagnuolo intended to limit his argument to the major life activity of working. In one section of the brief, Spagnuolo seems to focus solely on "work" as the relevant life function (*see* ECF No. 20, PageID.732), while later he seems to hint that he was also limited in other major life activities (*see id.* at PageID.758–759).

Assuming that Spagnuolo intended to argue that other major life activities beyond working were limited by his impairment, Auto Club still contends that the record evidence does not support a finding that any major life activity was limited.

Auto Club points to the fact that Spagnuolo's doctor specifically indicated that his bipolar disorder did not substantially limit any major life activities. (*See* ECF No. 18-2, PageID.411.) Dr. Matei also stated on Spagnuolo's interactive process questionnaire that Spagnuolo had been functioning well for at least a year and that his condition did not restrict him in terms of his employment. (*Id.* at PageID.411–412.) In her deposition, Dr. Matei noted that Spagnuolo had maintained employment without reported significant problems for 10 years and thus she did not feel his bipolar disorder had affected his work performance in a negative way. (ECF No. 18-6, PageID.674–675.)

In rebuttal, Spagnuolo points to a few pieces of evidence. First, Spagnuolo briefly mentions his hospitalization in 2016 "due in part to a psychotic break." (*Id.* at PageID.758) He also argues that other parts of Dr. Matei's notes and testimony undermine her indication on the interactive process questionnaire that he was not limited. He first points to a few vague statements by Dr.

11

Matei that Spagnuolo was struggling. He also emphasizes that Dr. Matei noted that Spagnuolo was, at one point, having "a hard time concentrating" at work because he felt belittled by his supervisor. (ECF No. 20-7, PageID.1071.) (But it is unclear whether Dr. Matei believed this limitation to be the result of his bipolar disorder, or just his difficulties with Cohen.)

Although the record evidence to support a finding that Spagnuolo was limited in any major life activity is scant, in light of the ADA's pronouncement that the definition of "disabled" should be interpreted broadly, the Court will assume without deciding that Spagnuolo meets the definition of disabled under the ADA. *See, e.g.*, *Deister v. AAA Auto Club of Michigan*, 91 F. Supp. 3d 905, 918 (E.D. Mich. 2015), *aff'd sub nom. Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652 (6th Cir. 2016).

**1.**

Because Spagnuolo alleges there is indirect evidence that establishes Auto Club terminated him because of his disability, the Court applies the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802. The burden then shifts to the defendant to articulate a non-discriminatory explanation for the employment action. *Id.* at 802–03. If the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual. *Id.* at 804.

To establish a prima facie case of disability discrimination, Spagnuolo must show five things: (1) that he is disabled; (2) that he is otherwise qualified for the position, with or without reasonable accommodation; (3) that he suffered an adverse employment action; (4) that the employer knew or had reason to know of his disability; and (5) in the case of termination, that the disabled individual was replaced. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). "Furthermore, the disability must be a 'but for' cause of the adverse employment

action." *Id.* (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc)).

Auto Club contests the first and fourth elements. (*See* ECF No. 18, PageID.117.) The first element, whether Spagnuolo is disabled, was discussed above. As to the fourth element, Auto Club argues that Cohen, who made the decision to terminate Spagnuolo, was not aware of Spagnuolo's impairment.

Cohen testified in her deposition that she did not know that Spagnuolo had bipolar disorder or any other impairment, or even that he had requested a reasonable accommodation. (ECF No. 18-3, PageID.466.) Spagnuolo's suspicion that Cohen knew he had an impairment based on his stuttering when he spoke to her on the phone (ECF No. 18-2, PageID.255) is not enough to show that Cohen knew or had reason to know he was disabled.

But it is undisputed that Dunlap, the human resources representative, knew about Spagnuolo's disorder since she was directly involved in his request for a reasonable accommodation. (ECF No. 18-4; PageID.497–498.) And Cohen and Dunlap both testified that Dunlap was involved in the ultimate decision to terminate Spagnuolo. (*Id.* at PageID.500; ECF No. 18-3, PageID.465.) So Spagnuolo satisfies this element of his prima facie case.

Auto Club also mentions in a footnote that Spagnuolo cannot meet the final element of a prima facie case because he cannot show he was replaced by someone outside of the protected class. (ECF No. 18, PageID.118.) Although Spagnuolo does not brief the issue, the Court assumes without deciding that Spagnuolo was replaced by someone outside of the protected class and that he can thus establish a prima facie case.

Even if Spagnuolo can establish a prima facie case of discrimination, he still must pass the other two steps of the McDonnell Douglas framework to survive summary judgment. Auto Club

has offered a legitimate, non-discriminatory reason for Spagnuolo's termination—his subpar performance. Auto Club points to a plethora of facts to support this contention, including multiple performance reviews, three improvement plans, emails, and testimony from Spagnuolo's direct supervisor. (*See* ECF No. 18-2, PageID.360–371 (emails); PageID.372–401 (reviews); PageID.402–407 (improvement plans); ECF No. 18-3, 18-4 (testimony)). This explanation and the supporting evidence are more than sufficient to meet Auto Club's burden at this stage. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) ("This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment.").

So, ultimately, the burden shifts back to Spagnuolo to show that Auto Club's proffered reason was a pretext for disability discrimination. Spagnuolo argues that the proffered reasons for his termination were insufficient to motivate Auto Club's actions. (ECF No. 20, PageID.751.)

At bottom, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). In the summary judgment context, Spagnuolo must produce "sufficient evidence from which the jury could reasonably reject [Auto Club's] explanation and infer that [Auto Club] intentionally discriminated against him." *Upshaw*, 576 F.3d at 586 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)). Spagnuolo does not satisfy this burden.

Spagnuolo claims that 13 days before he was placed on the first employee improvement plan he received a "very good performance review," which contradicts the allegations in the improvement plan. (ECF No. 20, PageID.752.) First, Spagnuolo's timeline is incorrect. He was placed on the initial EIP on January 2, 2018 (ECF No. 18-2, PageID.402), and received his 2017 performance review after that, at the end of January 2018 (*Id.* at PageID.401). And more importantly, Spagnuolo's characterization of his performance review is not supported by the record

14

evidence. Although the review does contain some positive comments, he received an overall rating of "4-Met Some Expectations"—this is the second lowest score, among five, that Spagnuolo could have received. (ECF No. 18-2, PageID.399.) Additionally, the 2017 performance review is not inconsistent with the EIP issued a few weeks earlier. Many of the specific criticisms in the 2017 performance review mirror the justifications offered for the EIP. These include failing to accurately track time, failing to send projects through the quality assurance process, struggling to write and understand code independently. (*Compare* ECF No. 18-2, PageID.390, 394, 395, 398, 400, *with* PageID.402.)

To the extent Spagnuolo attempts to argue these performance reviews are incorrect, that argument fails. Spagnuolo has presented no evidence to rebut the record or support his subjective belief that his supervisors' evaluations of his performance were incorrect. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010) ("[S]ubjective views . . . , without more, are insufficient to establish discrimination.").

Moreover, Auto Club argues that even if its assessment of Spagnuolo's performance was incorrect, it is shielded by the "honest belief rule." (ECF No. 18, PageID.119.) The "honest belief rule" states that "[i]f an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012). Recall that Cohen did not even know about Spagnuolo's bipolar disorder. And the record evidence, including sworn testimony by Cohen that she made the decision to terminate Spagnuolo solely based on his poor performance, is sufficient to show Auto Club made an honest and reasonable decision based on the facts before it. And Spagnuolo has offered no evidence to show that Cohen, or Dunlap, did not honestly believe the reasons set forth in his termination letter. Once the employer establishes

15

it had a honest belief in the reasons for taking action against the plaintiff, "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Id.* (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012)).

Spagnuolo also tries to cast doubt on Auto Club's true motivations by questioning why they would extend his probationary period two times if his performance was truly substandard. (ECF No. 20, PageID.752.) And he points out that he was placed on his third EIP three months after disclosing he suffered from bipolar disorder. (*Id.* at PageID.753.) These arguments are non-starters because they are again based solely on Spagnuolo's own suspicions and conjecture. *See Schoonmaker*, 595 F.3d at 268.

Finally, Spagnuolo argues that the temporal proximity of Spagnuolo disclosing his disability and his termination is evidence of pretext. But Spagnuolo's analysis and cited cases all relate to a claim of retaliation; Spagnuolo does not bring a retaliation claim. Temporal proximity has little relevance to establishing pretext under a claim of discrimination. *See Smith v. Gavulic*, No. 15-10288, 2017 WL 131557, at *8 (E.D. Mich. Jan. 13, 2017), *aff'd*, 694 F. App'x 398 (6th Cir. 2017) (citing *Adamov v. U.S. Bank Nat. Ass'n*, 726 F.3d 851, 855 (6th Cir. 2013)); *cf. Darby v. Childvine, Inc.*, No. 19-4214, 2020 WL 3529579, at *5 (6th Cir. June 30, 2020) (noting that temporal proximity may be a relevant factor in analyzing but-for causation for an ADA discrimination claim). But even if temporal proximity is relevant, Auto Club thoroughly explains why the timing of Spagnuolo's termination was "anything but suspicious." (ECF No. 21, PageID.1242–1243.)

Ultimately, Spagnuolo has failed to provide any evidence that Auto Club's proffered reasons for his termination were pretextual or that the company's actions were motivated by his alleged disability.

**2.**

Spagnuolo's final claim is that Auto Club discriminated against him by refusing to reasonably accommodate his disability.

Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include job restructuring, modified work schedules, reassignment to a vacant position, etc. *See* 42 U.S.C. §12111(9)(B).

In order to establish a prima facie case of failure to accommodate under the ADA, Spagnuolo must show that: (1) he is disabled; (2) he is otherwise qualified for the position; (3) Auto Club knew or should have known about his disability; (4) he requested an accommodation; and (5) Auto Club failed to provide the necessary accommodation. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). Spagnuolo "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

The only point the parties dispute is whether Spagnuolo requested an accommodation that was necessary and reasonable. Auto Club concedes (and the record makes clear) that Spagnuolo submitted to human resources a request for an accommodation. (ECF No. 18, PageID.113; ECF

No. 18-2, PageID.408.) But Auto Club argues that the only accommodation Spagnuolo requested was a different supervisor. (ECF No. 18, PageID.113.) Spagnuolo does not clearly respond to this argument. His brief repeatedly states that he requested an accommodation, but it does not delineate what kind of accommodation he requested, instead focusing on the argument that Auto Club did not meaningfully participate in the interactive process. (*See* ECF No. 20, PageID.762–765.) At the end of his brief, Spagnuolo does make an oblique reference to the type of accommodation he requested—stating he "made a specific request to return to his previous position, for which he was qualified to perform"—but he does not offer any citation to the record in support.

The Court's own review of the record provides the answer.

In his written request for a reasonable accommodation, Spagnuolo stated vaguely that he was requesting "a reasonable accommodation or an alternative position within the organization." (ECF No. 18-2, PageID.408.) Dunlap, the HR representative, requested that Spagnuolo's doctor fill out an interactive process questionnaire to gather more information on Spagnuolo's condition and what accommodations he needed. Spagnuolo's doctor, Dr. Matei, indicated that Spagnuolo was able to perform all of his job functions. (*Id.* at PageID.412.) And when asked to describe what reasonable accommodations would allow Spagnuolo to perform his job functions, Dr. Matei answered: "As above—please evaluate and accommodate as you see fit." (*Id.*) On the following page of the form, Dr. Matei wrote a note in the margin suggesting Spagnuolo be given two weeks off work and added, "he may in fact benefit from a reasonable accommodation such as changing positions. However it is not my call." (*Id.* at PageID.413.) Dunlap interpreted these responses to mean that Spagnuolo did not require an accommodation in order to perform his job, but she still granted him the two weeks off requested by his doctor. (ECF No. 18-4, PageID.498.) After Spagnuolo returned to work, Dunlap met with him about his accommodation request. During that

meeting Spagnuolo stated he wanted a new supervisor or a different position. (*Id.*) Dunlap consulted with her supervisor and in-house counsel and decided that, although she did not believe his documentation supported the need for any kind of accommodation, Auto Club would allow Spagnuolo to apply to other open positions within the company. (*Id.* at PageID.499.)

During his deposition, Spagnuolo testified repeatedly that he has the skills and ability to perform his job, but just not with Cohen as his manager. (ECF No. 18-2, PageID.200, 223.) Spagnuolo made it clear that he believed he could perform his job if only he was given a different manager. (*Id.*) Although Spagnuolo classified his requested accommodation as a request for either a new manager or a transfer to a different position, his testimony makes it clear that the only thing he really wanted was a different supervisor. His alternative request for a transfer was not motivated by a belief that he could not perform his current job duties, but simply a way to get a different manager. *See Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002) ("[A]lthough transfer can be a reasonable accommodation, under these circumstances it would not be. [Plaintiff] is seeking to force [his employer] to transfer him so that he will not be required to work with certain people.").

The type of accommodation Spagnuolo needed to fulfill his job duties is important because only certain types of accommodation are considered necessary and reasonable under the ADA. Both EEOC guidance and Sixth Circuit caselaw make clear that while a request for a job transfer can be a reasonable accommodation, a request for a new supervisor is not. *See* EEOC Enforcement Guidance, Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, No. 915.002, Answer to Question 33, available at https://bit.ly/30hw5bG (last visited July 15, 2020); *Coulson*, 31 F. App'x at 858; *Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672, 680 (6th Cir. 2014) (affirming summary judgment for employer on

failure-to-accommodate claim where employer denied employee's request to report to a different supervisor); *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658, n.2 (6th Cir. 2016) ("[A]n employer is not obliged to honor, as a 'reasonable accommodation,' an employee's request for assignment to a different supervisor.").

Statements from both Spagnuolo and his doctor establish that the only accommodation he needed to be able to perform his job was a different supervisor. But a request for a different supervisor is not a reasonable accommodation that an employer is required to provide under the law. So Spagnuolo cannot establish a prima facie case of failure to accommodate.

To the extent that Spagnuolo argues that Auto Club did not participate in the mandatory interactive process after he requested a reasonable accommodation, that claims also fails. Even though an employer is required by the ADA to engage in such a process, "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). In this case, Spagnuolo has not met his initial burden so he cannot bring a separate claim for failure to participate in the interactive process.

## IV.

For the foregoing reasons, Auto Club is entitled to summary judgment as a matter of law on all of Spagnuolo's claims. Auto Club's motion for summary judgment (ECF No. 18) is GRANTED and Spagnuolo's case is DISMISSED.

SO ORDERED.

Dated: July 22, 2020

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
                                             UNITED STATES DISTRICT JUDGE